UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                   :

DUDLEY GRANT,                             :

                    Petitioner-Plaintiff,    :     **OPINION AND ORDER**

    -against-                       :     **GRANTING TERMPORARY**
                                                :     **RESTRAINING ORDER AND**

THOMAS DECKER, et al.,            :     **PETITION FOR HABEAS**
                                                :     **CORPUS**

                    Respondents-Defendants. :     20 Civ. 2946 (AKH)
                                                :

------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

         Petitioner Dudley Grant, an Immigration and Customs Enforcement ("ICE")

detainee, filed a petition for a writ of habeas corpus, followed shortly thereafter by a motion for a

temporary restraining order ("TRO"), seeking immediate release from ICE detention.  Grant,

who suffers from numerous health conditions that make him particularly vulnerable to the effects

of COVID-19, alleges that Respondents are violating his right to due process through deliberate

indifference to his serious medical need.  On April 17, 2020, I held a hearing where I granted

Grant's motion for a TRO and petition for a writ of habeas corpus.  I indicated that my order of

that day was final and that this opinion would follow.

## BACKGROUND

         Petitioner, currently 53-years-old, is a Jamaican citizen who was admitted to the

United States as a lawful permanent resident in 1971, at age four.  In 2008, he was convicted of

receiving material involving the sexual exploitation of a minor, in violation of 18 U.S.C. §

225A(a)(2), and sentenced to 120 months of imprisonment.  He returned to prison twice, each

time for six months, for violations of supervised release.  Specifically, in 2015, he failed to

comply with computer monitoring, and in 2017, he had unauthorized contact with a minor.

Additionally, on two occasions, he allegedly represented himself to be a U.S. citizen in order to obtain a U.S. passport.

In November 2019, Petitioner was placed in removal proceedings at the Varick Street Immigration Court.  The Government charges him as removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(i), which renders deportable "[a]ny alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment," and 8 U.S.C. § 1227(a)(3)(D), which renders deportable "[a]ny alien who falsely represents, or has falsely represented, himself to be a citizen of the United States for any purpose or benefit."  Starting on November 2, 2019, he was detained at Hudson County Correctional Facility in Kearny, New Jersey.  Hudson County Correctional Facility is a county-run institution that houses ICE detainees pursuant to an Inter-Governmental Services Agreement ("IGSA").  Eight months later, his case has still not been adjudicated.

The COVID-19 pandemic has caused an unprecedented health crisis, particularly in houses of detention.  Petitioner contends that he is particularly vulnerable to COVID-19.  He suffers from numerous health conditions, including diabetes, hypertension, heart disease, mobility issues stemming from a 2018 accident that leave him wheelchair bound, impaired hearing and vision stemming from surgeries for brain tumors, a current tumor in his auditory canal, multiple hernias, and cognitive impairments.  Guidance from the Centers for Disease Control and Prevention ("CDC") indicates that diabetes, hypertension, and heart disease significantly increase the risk of severe symptoms and death from COVID-19.  Furthermore, Petitioner's hearing and cognitive issues make it difficult for him to understand instructions on how to mitigate the risk of contracting the virus.

2

Petitioner alleges that Hudson County Correctional Facility is not equipped to handle the spread of COVID-19 or to address his medical issues. In the past, Hudson County Correctional Facility detainees have reported substandard medical care and lack of access to basic hygienic supplies. *See* Office of Inspector General, OIG-18-32, Concerns about ICE Detainee Treatment and Care at Detention Facilities (2017), *available at* https://www.oig.dhs.gov/sites/default/files/assets/2017-12/OIG-18-32-Dec17.pdf. Since before the COVID-19 outbreak, the facility has allegedly failed to manage Petitioner's diabetes and denied him access to statin therapy. As of the filing of the habeas petition, there had been four staff deaths from COVID-19 and over 60 confirmed cases between staff and detainees.[1] Dr. Jaimie Meyer, an Assistant Professor of Medicine and Assistant Clinical Professor of Nursing at Yale, filed a declaration accompanying Grant's petition. Based on her experience studying infectious diseases in jails and prisons, along with her review of relevant reports, Dr. Meyer concludes that jails in Bergen, Essex, Hudson, and Orange Counties "are dangerously under-equipped and ill-prepared to prevent and manage a COVID-19 outbreak, which would result in severe harm to detained individuals, jail and prison staff, and the broader community." ECF No. 1-4 ¶¶ 25-26.

ICE and local officials at Hudson County Correctional Facility have taken steps to protect detainees from COVID-19. Officials are screening and monitoring detainees consistently with CDC guidelines. Detainees who test positive are isolated and treated. If necessary, they are transported to a hospital. Asymptomatic detainees who have been exposed to an infected person are placed in cohorts for a 14-day period. The facility has also increased sanitation frequency and the provision of sanitation supplies; suspended social visits; limited professional visits to

---

[1] ICE detainees are housed separately from other detainees at the facility. As of April 13, there were 8 confirmed cases among the ICE detainees and 70 confirmed cases among staff.

noncontact visits; enhanced screening for staff, vendors, and new detainees; and provided

COVID-19 education to staff and detainees.  But these steps have not met Petitioner's needs.

On March 11, 2020, Petitioner filed a request for humanitarian release with ICE.

He supplemented the request on March 16, 2020.  He filed the instant habeas corpus petition

pursuant to 28 U.S.C. § 2241 on April 9, 2020, at which point ICE still had not responded to his

request for humanitarian release.  The petition names as respondents Thomas Decker, in his

official capacity as Field Office Director, New York City Field Office, ICE; Chad Wolf, in his

official capacity as Acting Secretary, U.S. Department of Homeland Security; and William Barr,

in his official capacity as Attorney General, U.S. Department of Justice.  On April 12, 2020,

Petitioner filed a motion for a TRO requesting his immediate release from detention.  ICE

conducted custody reviews on April 10 and 13, 2020.  It concluded that Petitioner should remain

in custody.  Respondents say they cannot predict how long Petitioner's removal proceedings will

take.

Petitioner lived with his niece prior to his detention, has his own room in her

home in Uniondale, New York, and seeks this court's order to allow him to remain in her

custody, where he can self-quarantine, until the conclusion of his removal proceedings.  ECF No.

10.

## DISCUSSION

### I.    Jurisdiction and Venue

A person petitioning for a writ of habeas corpus must include as a respondent "the

person having custody of the person detained."  28 U.S.C. § 2243.  Additionally, Section 2241

requires that "the court issuing the writ have jurisdiction over the custodian."  *Braden v. 30th*

*Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 495 (1973).  I hold that Thomas Decker, the Field Office

Director of ICE's New York City Field Office, and not the New Jersey warden of the Hudson

4

County Correctional Facility that contracts to hold ICE's detainees, is Petitioner's custodian for the purpose of this court's jurisdiction.

Traditionally, the "immediate custodian rule" dictates that for "habeas challenges to present physical confinement[,] . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). In *Rumsfeld v. Padilla*, the Supreme Court considered a habeas petition brought by an individual detained at a naval brig as an enemy combatant. *Id.* at 430-32. The Court held that the immediate custodian rule applied even though the petitioner was not detained for a federal criminal violation. *Id.* at 436-37. The Court reasoned that neither the statute nor case law drew a distinction based on the source of the detention. *Id.* at 437-38. Instead, courts only relaxed the immediate custodian rule in cases where individuals challenged something other than present physical confinement. *Id.* Finally, the Court stated the "general rule" that "for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 443.

The *Padilla* Court summarized its rule: "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447. Neither the Supreme Court nor the Second Circuit has determined if and how this rule applies in the context of habeas petitions brought by immigration detainees. *See id.* at 435 n.8 (declining to resolve question of proper respondent for habeas petition filed by immigration detainee pending deportation).

But we are not involved with the commanding officer of a United States Navy brig who is subordinate to federal authority. Notwithstanding cases in this district that have

applied *Padilla* to wardens of state jails, I decline to extend the proper custodian rule to a New Jersey county jail operating under contract with, and subordinate to, the Field Office Director of ICE in New York City.  *Compare, e.g.*, *Almazo v. Decker*, No. 18 Civ. 9941, 2018 WL 5919523, at *1-2 (S.D.N.Y. Nov. 13, 2018) (collecting cases), *and Sanchez v. Decker*, No. 19-cv-8354, 2019 WL 6311955, at *2-5 (S.D.N.Y. Nov. 25, 2019) (finding that immediate custodian rule applies to immigration detainee and that "the fact that the warden may not have the ultimate authority to release the petitioner or provide him with a bond hearing does not mean that the warden is not the individual's immediate custodian"), *with, e.g.*, *Cruz v. Decker*, No. 18-CV-9948, 2019 WL 4038555, at *2-3 (S.D.N.Y. Aug. 27, 2019) (applying immediate custodian rule and finding that "the named federal respondents are properly named because they exercise control over Petitioner" detained in non-federal jail under contract with federal government), *and Rodriguez Sanchez v. Decker*, No. 18-cv-8798, 2019 WL 3840977, at *2-3 (S.D.N.Y. Aug. 15, 2019) ("Because a petitioner held in a non-federal facility under contract with the federal government is in custody pursuant only to the power and authority of the federal government, the federal official with the most immediate control over that facility is the proper respondent." (internal quotation marks omitted)); *see also Calderon v. Sessions*, 330 F. Supp. 3d 944, 953 (S.D.N.Y. 2018) ("[I]n the immigration context, when a petitioner is detained in a local facility pursuant to an IGSA with a federal agency; and the immediate custodian must seek the agency's authorization for admission or release of detainees; and further has neither knowledge nor interest in key questions, then legal custodians are proper respondents to both core and non-core challenges.").  Thus, in *Matias Madera v. Decker*, citing *Calderon*, I held that because of the nature of the IGSA and "[b]ecause of the extent of [the] power and control over Petitioner," the ICE regional director was "the first and most immediate federal official who is able respond to

the petition and, if indicated, deliver the relief sought." No. 18 Civ. 7314, 2018 WL 10602037, at *3 (S.D.N.Y. Sept. 28, 2018).

        I hold that Decker is Grant's immediate and legal custodian, and that he is "the person with the ability to produce the prisoner's body before the habeas court" and the person with "day-to-day control over [the petitioner's] physical custody." *Padilla*, 542 U.S. at 435, 439 (internal quotation marks omitted). Officials at Hudson County Correctional Facility cannot take action with respect to Petitioner's custody independent of ICE. They may exercise prison discipline and provide normal medical care and transportation, but subject to Decker's command. Hudson County Correctional Facility officials, for example, lack the authority to produce Petitioner's body or to control his physical custody absent specific mandates from ICE.[2] This holding does not run afoul of the *Padilla* Court's concern that petitioners would forum shop by "nam[ing] a high-level supervisory official as respondent and then su[ing] that person wherever he is amenable to long-arm jurisdiction." *Padilla*, 542 U.S. at 447. Decker is the most immediate federal official responsible for Grant, not a "remote supervisory official." *Id.* at 435.

## II. Issuance of a Temporary Restraining Order

        The standard for granting a temporary restraining order is identical to the standard for granting a preliminary injunction. *Spencer Trask Software & Inf. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002). Thus, Petitioner must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that [the relief] is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] mandatory injunction should

---

[2] The Government argues that the present case is distinct from *Matias Madera* because, whereas *Matias Madera* involved a demand for a bond hearing, here the Hudson County Correctional Facility does have control over the relevant conditions of Petitioner's custody. The jail is administering direct medical care and responding to the COVID-19 crisis. This argument fails because Petitioner is not seeking better medical care or better conditions. Instead, he is seeking immediate release from custody because conditions cannot be made safe.

issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Tom Doherty Assocs., Inc. v. Saban Entm't*, 60 F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).  Clearly, a TRO is an appropriate remedy for detainees with high-risk medical conditions.  *See, e.g.*, *Valenzuela Arias v. Decker*, No. 20 Civ. 2802, 2020 WL 1847986 (S.D.N.Y. Apr. 10, 2020); *Avendaño Hernandez v. Decker*, No. 20-CV-1589, 2020 WL 1547459 (S.D.N.Y. Mar. 31, 2020); *Coronel v. Decker*, No. 20-cv-2472, 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020); *Basank v. Decker*, 20 Civ. 2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020).

### A.  Irreparable Ham

"To establish irreparable harm, [Petitioner] must demonstrate an injury that is neither remote nor speculative, but actual and imminent," and "[t]he injury must be one requiring a remedy of more than mere money damages." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (internal quotation marks omitted).  Respondents concede that Petitioner satisfies this requirement.

Petitioner is likely to suffer irreparable harm if not granted release.  He is at high risk for severe illness or even death if he contracts COVID-19, which he is more likely to catch while detained.  Petitioner's health conditions, particularly diabetes, hypertension, and heart disease, place him at higher risk than the general population.  *See* Centers for Disease Control and Prevention, *Information for People Who Are at Higher Risk for Severe Illness* (last updated Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.  Dr. Meyer also concludes that individuals in ICE detention in jails in metropolitan New York City are more likely to contract COVID-19 than those in the general population.  ECF No. 1-4 ¶ 36.  Other courts considering motions for TROs in the wake of the

COVID-19 crisis have concluded that "[t]he risk that Petitioners will face a severe, and quite possibly fatal, infection if they remain in immigration detention constitutes irreparable harm warranting a TRO." *Basank*, 2020 WL 1481503, at *4; *see also Valenzuela Arias*, 2020 WL 1847986, at *4 (collecting cases).

### B.  Likelihood of Success on the Merits

"In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was so 'egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).  "[T]he point of conscience shocking is reached when government actors are deliberately indifferent to the medical needs of pretrial detainees."  *Charles v. Orange Cty*, 925 F.3d 73, 85-86 (2d Cir. 2019).  Thus, a claim for violation of substantive due process "must meet two requirements: (1) that [Petitioner] had a serious medical need . . . , and (2) that the [Respondents] acted with deliberate indifference to such needs."  *Id.* at 86.

Petitioner meets this standard.  He has a serious medical need.  "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."  *Id.* at 86.  As discussed above, Petitioner is more likely than the general population to suffer severe illness or death if he contracts COVID-19.

He also has demonstrated deliberate indifference to his serious medical need.  The Second Circuit explained in the context of a due process challenge:

> [T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).  Authorities can be deliberately indifferent to a detainee's health where they "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering" in the future.  *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

Though ICE has developed practices that reduce the risk of contracting COVID-19, it has not been able to treat Petitioner's severe medical condition and susceptibility to contracting the virus.  He is endangered himself, and he endangers others.  Furthermore, the Government is not taking special steps, short of release, to protect medically fragile detainees like Petitioner.  *See Avendaño Hernandez*, 2020 WL 1547459, at *2 (finding generalized preventative measures "are unresponsive to Petitioner's specific medical need — the risk posed by COVID-19 to high-risk individuals in particular"); *Coronel*, 2020 WL 1487274, at *5 (finding "no evidence that the Government took any specific action to prevent the spread of COVID-19 to high-risk individuals . . . currently being held in civil detention").  Petitioner's vulnerability is compounded by his cognitive impairments.  Respondents have been deliberately indifferent to Petitioner's needs.  Despite awareness of the significant threat to Petitioner's health, authorities have failed to take crucial steps that would reduce that threat.

### C.  Balance of the Equities and Public Interest

The balance of the equities and the public interest, "[t]he final two factors[,] merge when an injunction is to be issued against the government."  *Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018).

There are public interest factors favoring Petitioner's release.  "[P]ublic interest is best served by ensuring the constitutional rights of persons within the United States are upheld."  *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018).  As discussed above, current conditions likely violate Petitioner's due process rights under the Fifth

Amendment.  Additionally, public health is a "significant public interest[ ]."  *Grand River*

*Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 169 (2d Cir. 2005).  "[P]ublic health and safety

are served best by rapidly decreasing the number of individuals detained in confined, unsafe

conditions."  *Basank*, 2020 WL 1481503, at *7.

The Court should balance the constitutional and public health considerations

against "any public interest in [Petitioner's] continued detention—including any risk of flight or

danger to the community that Petitioner[ ] pose[s]."  *Coronel*, 2020 WL 1487274, at *8.

Petitioner does pose some danger to the public.  He was convicted of a crime involving child

pornography in 2008.  He violated the conditions of his supervised release on two occasions,

including through unauthorized contact with a minor in 2017.  On the other hand, there are

several safeguards standing in the way of future criminal activity.  Restrictions in place due to

COVID-19, along with Petitioner's mobility issues, limit his contact with others.  His niece

reports that there are not any computers in her home.  Finally, in addition to bail conditions

imposed by ICE, he is subject to monitoring based on his inclusion on the sex offender registry.

Petitioner does not pose a flight risk.  He has named a responsible custodian, does

not have any reported history of failing to appear, and is constrained by health and travel

restrictions.  Taken together, the public interest factors weigh in favor of release.

## III.    Habeas Relief

"On a petition for a writ of federal habeas corpus, the petitioner bears the burden

of proving by a preponderance of the evidence that his constitutional rights have been violated."

*Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997).  For the reasons shown, Petitioner has

demonstrated that his continued detention violates his right to due process.  His petition for a

writ of habeas corpus is granted.  And since the parties have fully briefed the issues presented,

11

the TRO shall be considered a preliminary injunction.  The reasons discussed in this decision

constitute my findings of fact and conclusions of law.

## CONCLUSION

For the foregoing reasons and for the reasons stated on the record at the hearing,

Grant's motion for a TRO securing his release on the conditions previously announced, *see* ECF

No. 18, is granted.  Furthermore, his petition for a writ of habeas corpus is granted to the extent it

secures his release.  It is denied in all other respects.  The Clerk shall mark the case closed.

SO ORDERED.

Dated:      June 19, 2020                              /s/ Alvin K. Hellerstein
            New York, New York                   ALVIN K. HELLERSTEIN
                                                 United States District Judge